**SO ORDERED.**

**SIGNED this 29 day of June, 2011.**



_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:                              )
                                    )
JUDITH ANN GRUTSCH,                 )          Case No. 10-40216
                                    )
                 Debtor.            )
_____    )

## MEMORANDUM OPINION AND ORDER DENYING
## DEBTOR'S MOTION TO MODIFY PLAN AFTER CONFIRMATION

The issue before the Court is the post-BAPCPA interplay between 11 U.S.C. §§ 1325(b)(4)

and 1329(a)(2), specifically whether this (originally) above-median income Debtor, who began this

case with a 5–year applicable commitment period, can modify her plan so she only has to pay into

her plan for three years without paying unsecured creditors in full. This Court holds she can do so,

so long as the requirements of 11 U.S.C. § 1329(b) are fully satisfied, which includes the

requirement of good faith.

This issue is presented by the Debtor's Motion to Modify Plan After Confirmation.[1] Debtor

seeks to modify her Chapter 13 plan to reduce the amount of her monthly plan payment as well as

_____
[1]Doc. 44.

the plan length from 60 months to 36 months following her post-petition retirement from work. Because the Chapter 13 Trustee ("Trustee") objected only to the latter portion of the motion, the Court entered an order partly granting the order, thus reducing her monthly payment.[2].

Both parties have briefed the remaining legal issue, and the Court is ready to rule. The Court has jurisdiction to decide this matter,[3] and it is a core proceeding.[4]

## I.      FINDINGS OF FACT

The parties have stipulated to the relevant facts,[5] and the Court adopts those stipulations. Debtor filed her bankruptcy petition on February 23, 2010. At the time of the filing, Debtor's annualized current income, as reported on Form B22, was $57,853. Because her annual income exceeded the median income for a single person household in Kansas, Debtor was deemed an "above median income" Debtor under 11 U.S.C. § 1325(b)(4).[6] As a result, she was required by § 1325(b) to propose a Chapter 13 plan that ran for 60 months, rather than 36 months, which is the minimum plan length for a below median income debtor. Debtor's original plan was confirmed as a 60 month plan without objection.

In August 2010, only six months after she filed the case, she retired. This resulted in a substantial reduction in her monthly income. Debtor's income is now below the median income for

---

[2]Doc. 56. This order specifically reserved the issue of reducing the term of the plan payments.

[3]This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and 11 U.S.C. § 1334(a) and (b), and by operation of a Standing Order dated August 1, 1984, effective July 10, 1984, referenced in D. Kan. Rule 83.8.5, wherein the District Court for the District of Kansas referred all cases and proceedings in, under, or related to Title 11 to the District's bankruptcy judges.

[4]28 U.S.C. § 157(b)(2)(L).

[5]Doc. 52.

[6]All future statutory references are to the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

2

a single person household in Kansas.  As a result of the decrease in her income, Debtor filed a

motion to modify her plan to both reduce the amount of her payments and to shorten the term of the

plan from 60 months to 36 months.  Additional facts will be discussed below, when necessary.

## II.   ISSUE

The central issue is whether a debtor, whose income is above the median income for the

pertinent household size at the time a bankruptcy case is filed, but whose income subsequently falls

below the median, can modify her confirmed plan under § 1329 to reduce the applicable commitment

period (e.g., the duration of the plan) from 60 months to 36 months.

## III.   CONCLUSIONS OF LAW

"One of the more significant changes made to Chapter 13 by the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 (BAPCPA) was the inclusion of an 'Applicable

Commitment Period' to replace the minimum duration of three years in the 'best efforts test' of 11

U.S.C. § 1325(b)(1)(B)."[7]  Prior to the enactment of BAPCPA, debtors were required to satisfy the

"best efforts test," which could be accomplished if the plan provided that "all of the debtor's

projected disposable income to be received in the three year period under the plan will be applied

to make payments under the plan."[8]

With the passage of BAPCPA, however,  if the trustee or the holder of an allowed unsecured

claim files an objection to a plan, debtors must now propose a plan that either (1) pays all allowed

unsecured claims in full or (2) commits to the payment of all of the debtor's "projected disposable

income," as defined in § 1325(b)(2), to be received during the "applicable commitment period."  The

---

[7]*In re Buck*, 443 B.R. 463, 465 (Bankr. N.D. Ga. 2010).

[8]11 U.S.C. § 1325(b)(1)(B) (2004).

applicable commitment period is defined in § 1325(b)(4). That provision states that the applicable commitment period is three years except for debtors whose "current monthly income" is not less than the median family income for a household of a similar size in the state in which the debtors reside.

For debtors whose "current monthly income" exceeds the median family income for their state, the applicable commitment period is extended to five years. Essentially, "current monthly income" is "anchored in static historical income"[9] because it is defined as, with certain exceptions, "the average monthly income from all sources that the debtor receives . . . during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ."[10] "Current monthly income" is, therefore, not necessarily a debtor's actual income upon confirmation or any other time, but is instead a fixed amount based upon the debtor's average income for the six month period preceding the filing date.

In this case, Debtor's current monthly income on the date of filing was clearly above the median for a one-person household in Kansas. As such, she was required to propose a five year plan. Debtor's five year plan was confirmed without objection. Because Debtor's income is now below the median income, however, she seeks to amend her plan to reduce the length of the plan to 36 months. The Trustee has objected, arguing that § 1325(b) requires Debtor to remain in the plan for 60 months.[11]

---

[9]Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed., § 506.1, at ¶ 16, Sec. Rev. Mar. 29, 2006, www.Ch13online.com.

[10]11 U.S.C. § 101(10A).

[11]In addition to the Trustee's objection based upon failure to comply with the applicable commitment period, the Court notes that any proposed modification must also comply with the requirements of § 1325(a), which must be met regardless whether any objection has been filed by the trustee or a creditor.

4

Debtor responds by arguing that § 1325(b) is applicable only at the original confirmation stage, and is inapplicable in the context of a motion to modify the Chapter 13 plan under § 1329. Thus, this Court must decide whether the provisions of § 1325(b) are applicable when a debtor seeks to modify a previously confirmed Chapter 13 plan.

The starting point for any modification of a confirmed Chapter 13 plan is § 1329(a). That statute provides:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) <u>extend or reduce the time for such payments</u>;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) . . . .[12]

Section 1329(b)(1) then specifically provides that "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section."

There does not appear to be any binding precedent in the Tenth Circuit on the issue of whether § 1325(b) applies to plan modifications under § 1329. This Court recently addressed the applicability of the disposable income test, which is found in § 1325(b)(2), in a case where the

---

[12]Emphasis added.

5

Chapter 13 Trustee sought to increase plan payments when the debtors' income drastically increased during the life of a plan, but did not specifically find that the requirements of § 1325(b) must be met for any plan modification brought pursuant to § 1329.[13]   Numerous courts have now addressed the issue, and although there is a split in authority, the vast majority of courts deciding the issue have held that post-confirmation modifications are not governed by 11 U.S.C. § 1325(b).[14]   This Court agrees with the majority.

The decision in *In re Davis*,[15] a recent case from the Northern District of Illinois, is very persuasive.   Just as in this case, Davis was an above median income debtor when she filed her bankruptcy petition; she proposed a 60 month Chapter 13 plan, as required by § 1325(b).   Post-

---

[13]*In re Self*, 2009 WL 2969489 (Bankr. D. Kan. 2009).   What the Court did find in *Self* was that the plan modification was not proposed in good faith when debtors simply absorbed the trebling of their income (increasing by $123,500 over the amount noted on the original Schedule I) by increasing their housing expense by almost 100% ($1,480 to $2,800), doubling their food expense, increasing clothing and laundry expenses by a factor of seven, trebling medical and dental expenses, quadrupling recreation expenses, increasing health insurance from $0 to $578, increasing hair care, toiletries, and school tuition (private) by a factor of 10, and increasing charitable contributions from $10 to $1400 per month.

[14]Although this is not a comprehensive list, *see, e.g., In re Hall*, 442 B.R. 754, 761 (Bankr. D. Idaho 2010) (holding because § 1329 does not include any reference to § 1325(b), even though § 1329 includes specific reference to several other Code sections, the requirements of § 1325(b) should not be applicable to § 1329 modifications, and further noting that "§ 1329 was not amended to include the provisions of § 1325(b) when the 'disposable income' test was significantly amended by Congress in 1984. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333. When the Bankruptcy Code was significantly amended in 2005, and though there was a considerable existing division in the case law on this issue, § 1329, while amended in other ways, was not changed by Congress to include any reference to § 1325(b));" *In re Davis*, 439 B.R. 863 (Bankr. N.D. Ill. 2010*); In re Walker*, 2010 WL 4259274, 9 -10   (Bankr. C. D. Ill. 2010); *In re White*, 411 B.R. 268, 272–73 (Bankr. W.D.N.C. 2008); *In re McCully*, 398 B.R. 590, 593 (Bankr. N.D. Ohio 2008); *In re Hill*, 386 B.R. 670 (Bankr. S.D. Ohio, 2008); *In re Wetzel*, 381 B.R. 247, 251–52 (Bankr. E.D. Wis. 2008) (holding that "[b]ecause the current definition of projected disposable income results in a calculation that is, in large part, fixed by pre-petition circumstances, reviewing that calculation at the time of a post-confirmation modification may not be particularly meaningful. Because of its statutory definition, 'current monthly income' once correctly calculated should not change over time. Thus, attempting to apply § 1325(b) to a § 1329 modification is not favored by post-BAPCPA cases"); *In re Ewers*, 366 B.R. 139, 141 and 142 (Bankr. D. Nev.2007) (noting that if the trustee's position were correct, then  § 1329(a)(2) would be rendered meaningless for above median income debtors, as they would be prohibited from doing either of the options noted—reducing or extending their plan length); *In re Ireland*, 366 B.R. 27, 34 (Bankr. W.D. Ark. 2007); *In re McCollum*, 363 B.R. 789, 798 (E.D. La. 2007); *In re Howell*, 2007 WL 4124476 (Bankr. W.D. La. 2007); *In re Sunahara*, 326 B.R. 768 (9th Cir. BAP 2005); and *In re Golek*, 308 B.R. 332, 336–37 (Bankr. N.D.Ill. 2004).

[15]439 B.R. 863.

6

confirmation, however, she lost her job and separated from her husband, leaving unemployment benefits and child support as her sole sources of income. She moved to modify her plan to both reduce the amount of the monthly payments required to fund her Chapter 13 plan and the duration of the plan. The trustee objected, arguing that § 1325(b) was applicable to any plan modification, that § 1325(b) sets the applicable commitment period at 60 months, and thus that the court should deny the motion.

The court found that § 1325(b) was not applicable to a § 1329 plan modification. First, it noted that § 1329(b)(1) expressly lists four discrete subsections of Chapter 13 that apply to a modification under § 1329, § 1322(a), § 1322(b), § 1323(c), and "the requirements of section 1325(a)."[16]  "By specifying only these four provisions, § 1329(b) implicitly excludes other provisions, under the maxim *expressio unius est exclusio alterius*."[17]  In other words, by specifically including certain statutory provisions in the requirements under § 1329, the court must assume that any provision not included in the list was intentionally omitted. The majority of decisions to address this issue have followed this line of reasoning, holding that the failure to list § 1325(b) in the requirements for amendments under § 1329 makes § 1325(b) simply inapplicable in the plan modification context.

There are, however, a few courts that have reached the opposite conclusion, finding that § 1325(b) is applicable to modifications.[18]  These cases essentially base their holdings on three

---

[16]*Id.* at 866.

[17]*Id.*

[18]*See, e.g., See, e.g. In re Heideker*, __ B.R. __, 2011 WL 2432913 (Bankr. M.D. Fla. 2011); *In re Buck*, 443 BR 463 (Bankr. N.D. Ga. 2010), *In re King*, 439 BR 129 (Bankr. S.D. Ill. 2010) and *In re Baxter*, 374 B.R. 292, 296 (Bankr. M.D. Ala. 2007).

7

arguments: (1) that § 1325(a) itself incorporates § 1325(b), thus making the latter provision applicable to modifications; (2) that § 1325(a)(1) requires that a plan "compl[y] with the provisions of this chapter;" and (3) that the reference to the applicable commitment period in § 1329(c) indicates Congressional intent to incorporate the provisions requiring compliance with the applicable commitment period into a plan modification. For the following reasons, the Court finds these arguments unpersuasive.

With regard to the first argument—that § 1325(a) itself incorporates § 1325(b), making the latter subsection applicable to modifications under § 1329—the Court finds that a careful reading of § 1329(b)(1) leads to a different conclusion. Although § 1329(b)(1) specifically states that "[s]ections 1322(a), 1322(b), and 1323(c) . . . apply to any modification," different language is used with regard to § 1325(a). Section 1329(b)(1) does not simply incorporate § 1325(a) and make that section applicable to a modification. Instead, § 1329(b)(1) specifically incorporates "the requirements" of § 1325(a). This distinction is important.

Unlike the provisions found in § 1325(a), the provisions of § 1325(b) are not "requirements" for confirmation of a plan. Instead, those provisions provide exceptions to plan confirmation if a party objects, but a debtor is not otherwise required to comply with any part of § 1325(b). As noted in *Davis*, "[t]he provisions of § 1325(b), then, are not part of the 'requirements' of § 1325(a) made applicable to plan modification under § 1329(b)(1)."[19]

With regard to the second argument—that § 1325(a)(1) makes § 1325(b) applicable because a plan must generally comply with all provisions of Chapter 13—the Court finds this reading of the Code to be inconsistent with established rules of statutory construction. It is an elementary canon

_____

[19]*Davis*, 439 B.R. at 867.

8

of statutory construction that "a statute should be interpreted so as not to render one part inoperative."[20]  If the Court were to find that the general requirement in § 1325(a)(1) that the plan must comply with the provisions of Chapter 13 makes § 1325(b) applicable to a plan modification under § 1329, that reading would render the specific citations to §§ 1322(a), 1322(b), and 1323(c) superfluous.  There would be no reason for Congress to specifically reference those three specific subsections in Chapter 13, as requirements for confirmation, if all of Chapter 13 is incorporated into § 1329 by § 1325(a)(1).[21]  The Court must assume that Congress had a purpose in specifically referencing §§ 1322(a), 1322(b), and 1323(c), and, therefore, will not read § 1325(a)(1) to incorporate every provision of Chapter 13, including § 1325(b), into the requirements for plan modifications under § 1329.

Finally, the Court finds that the last argument in support of the position that § 1325(b) applies to plan amendments under § 1329—that the reference to the applicable commitment period in § 1329(c) indicates Congressional intent to incorporate the provisions requiring compliance with the applicable commitment period into a plan modification—is also unpersuasive.  In fact, the Court finds that the fact § 1329(c) specifically references the applicable commitment period weighs heavily against attempts to read the provisions of § 1325(b) into § 1329(b).  In the process of rewriting the Bankruptcy Code with the enactment of BAPCPA, Congress clearly recognized that § 1329 should be amended to incorporate the concept of the applicable commitment period.  However, Congress chose only to address the applicable commitment period in § 1329(c).  The fact that Congress

---

[20]*Dept. of Revenue of Oregon v. ACF Indus., Inc.*, 510 U.S. 332, 333 (1994).

[21]*See In re Hall,* 2008 WL 2388628 at 2 (noting while it is true "that § 1325(a) references § 1325(b) (providing that courts shall confirm plans that meet the requirements of subsection (a), '[e]xcept as provided in subsection (b)') ... such indirect incorporation of § 1325(b) into § 1329 through § 1325(a) has been a bridge too far for other bankruptcy courts to accept in this and other contexts").

specifically amended one subsection of § 1329 to incorporate the applicable commitment period, but elected not to make similar changes to another subsection of § 1329, strongly implies that the absence of any mention to § 1325(b) or the applicable commitment period in § 1329(b) is not accidental or caused by Congressional oversight.

Based upon the above analysis, the Court finds that the provisions of § 1325(b) are not applicable to a plan modification proposed under § 1329. That does not end the inquiry, however. Although § 1325(b) is not applicable, the requirements of § 1325(a) do apply—including the requirement that the modification be proposed in good faith. "The good faith requirement of § 1325(a)(3) fills the gap that would otherwise exist, allowing all parties to object to inappropriate payment terms—whether excessive or inadequate—in a proposed modification."[22]

In analyzing whether a plan is proposed in good faith, the Tenth Circuit has held that courts should consider a non-exclusive list of factors, known as the "*Flygare* factors" that were set forth in *Flygare v. Boulden*.[23] As the party seeking a discharge under Chapter 13 of the Bankruptcy Code, the Debtor bears the burden of proving that her plan (or modified plan) is proposed in good faith.[24]

---

[22] *In re Davis,* 439 B.R. at 869. *See also In re Kearney*, 439 B.R. 694 (Bankr. E.D. Wis. 2010) (holding that while disposable income test does not apply at modification after confirmation, the reasonableness and necessity of expenses are on the table via good-faith analysis; modification fails good-faith analysis when debtor inflated expenses to reduce plan payments notwithstanding an increase in income).

[23] 709 F.2d 1344 (10th Cir. 1983). These factors include "(1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee."

[24] *In re Alexander*, 363 B.R. 917, 921-22 (10th Cir. BAP 2007).

The Court finds the Debtor has failed to show a good faith basis for reducing the length of her Chapter 13 plan.[25]  Debtor initially proposed to pay her unsecured creditors for a term of 60 months.  Although she has shown a change in circumstances that necessitates a reduction in the amount of her plan payments following her retirement, the Stipulation of Facts that constitutes the full evidentiary record before this Court provides no basis for shortening the plan from 60 to 36 months.

 "The heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford."[26]  By requiring a 60 month plan length for above median income debtors, the Code ensures that debtors are subject to the supervision of the Court for a longer period of time than is required of below median income debtors.  During that time, the Chapter 13 Trustee or any party in interest can request and obtain copies of the debtor's post-petition tax returns[27] and annual income and expense reports.[28]  If a debtor's income increases or expenses decrease, thereby making more money available for Chapter 13 plan payments, a Chapter 13 Trustee or a creditor may request plan modification under § 1329. "Together, those sections best ensure that debtors repay the maximum they can afford over the course of their Chapter

---

[25]The Court recognizes that the Trustee did not raise a good faith objection in this case.  However, unlike § 1325(b), the requirements found in § 1325(a) must be met regardless of whether a specific objection is raised.  *See In re Price*, 366 B.R. 389, 396 (Bankr. M.D. Pa. 2007); *Beard v. U.S. Trustee*, 188 B.R. 220 (W.D. La.1995); *In re Smith*, 100 B.R. 436 (S.D. Ind. 1989); and *In re Fricker*, 116 B.R. 431 (Bankr. E.D. Pa.1990).

[26]H.R. Rep. 109–31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89.

[27]11 U.S.C. § 521(f)(1).

[28]11 U.S.C. § 521(f)(4).

Case 10-40216    Doc# 62    Filed 06/29/11    Page 11 of 13

13 bankruptcy case."[29]  However, if the debtor is able to avoid the required plan length by amending her plan due to a voluntary (or involuntary) reduction in her income, and paying off the plan quickly during the remaining reduced period, she in essence deprives the creditors and the trustee of the opportunity to seek additional payments in the event her income were to increase (or expenses decrease) in the future.[30]

In addition, the length of a Chapter 13 plan is generally considered to be *res judicata* upon plan confirmation, subject to change only upon a showing of a significant change in circumstances of the debtor.[31]  In this case, Debtor's only change of circumstances is her retirement, which admittedly resulted in a loss of income.  There is no evidence that this was a forced or required retirement, or that it would constitute some hardship to pay the reduced amount for the remainder of the 60-month commitment period.  There is no evidence, or even argument, that Debtor will be unable to continue making the now reduced payments the full length of the original plan.  For those reasons, the Court finds that the change of circumstances in this case is not sufficient to warrant a

---

[29]*In re King* 2010 WL 4363173, 3 (Bankr. D. Colo. 2010).  This Court also previously noted in *In re Kidd*, 374 B.R. 277, 280 n.6 (Bankr. D. Kan. 2007) and *In re Lanning*, 2007 WL 1451999 at 8 (Bankr. D. Kan. 2007) the statement made by one of the proponents of the legislation, Senator Sessions, that "[i]f a debtor files under Chapter 13 and learns how to manage money under a structured repayment plan that requires some discipline, the debtor learns financial responsibility and should be able to avoid future financial turmoil. Chapter 13 bankruptcies allow debtors to keep their assets and pay back a portion of their debts over a 5 year period. In exchange, the remaining portions of their debt are discharged and the debtor gets a fresh start." 151 Cong. Rec. S2462–02 at S2472-S2473, 2005 WL 562943 (March 10, 2005) (statement of Senator Sessions).  As I've noted before, the applicable commitment period might well have represented Congressional hope that requiring payments over a lengthy period of time might assist debtors in acquiring the financial discipline they would need to maintain their fresh start, post-discharge.

[30]*See, e.g., In re Clevenger*, 430 B.R. 539, 541 (Bankr. W.D. Mo. 2009) where the debtors sought modification of the plan, the result of which would have resulted in debtors being entitled to an immediate discharge because they would have essentially completed the plan at that point.  This result would deprive parties in interest of the opportunity to see if a debtor's income increased for any reason over the following two years.

[31]*Id.* at 541 (holding that "[t]o avoid the preclusive effect of the principle of *res judicata*, the modification should be necessitated by an unanticipated substantial change in circumstances affecting the debtors' ability to pay").

reduction in the length of the plan, the original order requiring a term of 60 months is res judicata on that issue, and thus the attempt to modify the plan duration is not proposed in good faith.[32]

## III.    CONCLUSION

The Court holds that the provisions of § 1325(b), including provisions concerning the disposable income test and the applicable commitment period, are not applicable to plan modifications under § 1329. However, a proposed modification must still satisfy the requirements of § 1325(a), including the requirement that the modification be proposed in good faith. The proposed modification must also be necessitated by an unanticipated and substantial change in circumstances that justifies not only the debtor's request to reduce the amount to be paid each month, but that also justifies paying that reduced amount over a lesser period of time, lest principles of *res judicata* be violated. The Court holds that Debtor has not produced evidence to justify the preclusive effect of the principle of *res judicata* regarding plan length, and thus the Order of Confirmation[33] that required the plan endure for 60 months remains controlling.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Debtor's Motion to Modify Plan After Confirmation is denied to the extent it seeks to shorten the plan length to less than 60 months.

###

---

[32]*Id*. at 543 (holding debtors offered no reason why they cannot, or should not, remain in the case for 60 months, and finding "that the Debtors have unfairly manipulated the Bankruptcy Code by attempting to use a decrease in net monthly income to propose a plan with no payment to unsecured creditors, since they could make payments to such creditors if the plan continued for the applicable commitment period. They have offered no reason for not being required to make payments for that sixty-month period. In other words, it is contrary to the spirit of Chapter 13 to permit these Debtors to seize upon a totally unrelated change in circumstances to avoid § 1325(b)'s applicable commitment period, particularly given 'the clear congressional intent of BAPCPA, which was enacted to ensure that debtors repay creditors the maximum they can afford.'" (Footnotes omitted).

[33]Doc. 20 (confirmation order at ¶ 7: "LENGTH OF PLAN. Nothing in the Plan shall be construed to permit a below median income debtor to receive a discharge before three years, or an above median debtor before five years)."

13